**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| S. ROTONDI & SONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> TOWNSHIP OF RANDOLPH, BRITTON INDUSTRIES, INC., AND JAMES BRITTON, <br><br> *Defendants*. | Civil No.: 23-cv-23161 (KSH) (SDA) <br><br><br> **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.      Introduction**

This dispute arises from a 2023 contract for leaf recycling that the Township of Randolph (the "Township") awarded to Britton Industries, Inc. ("Britton") instead of S. Rotondi & Sons, Inc. ("Rotondi").  Rotondi has sued Britton and its principal, defendant James Britton ("James Britton," and with Britton, the "Britton Defendants") for tortious interference with prospective economic advantage and it has sued the Township for retaliation.  Rotondi also seeks declaratory judgment that the contract awarded to Britton is void and must be rescinded.  The Township and the Britton Defendants have moved to dismiss the complaint.  The motions are fully briefed, and the Court decides them without oral argument.

**II.     Background**

The complaint alleges as follows.  Plaintiff Rotondi is a New Jersey corporation based in Morris County.  (D.E. 1-1, Compl. ¶ 1.)  Defendant James Britton is the owner and president of defendant Britton, a New Jersey corporation based in Lawrenceville, New Jersey.  (*Id.* ¶ 3.)  Defendant Township is a municipality within the state of New Jersey.  (*Id.* at ¶ 2.)

On September 19, 2023, the Township issued a public notice for proposals to provide the

1

Township with "leaf loading, hauling, and proper recycling services from October 1, 2023 through January 31, 2024." (*Id.* ¶ 4.) According to Rotondi, the bid specifications were as follows:

   a. Contractor must remove approximately 20,000 cubic yards of leaves total;
   b. Contractor must remove a minimum of 700 yards per day;
   c. Contractor must use a Class C or equivalent Recycle Center for the disposal of those leaves;
   d. Bid Proposals must identify each proposed disposal facility the Contractor intends to use;
   e. Bid Proposals must provide proof of each proposed disposal facility's classification (i.e., Class C, Class B, etc.);
   f. Bid Proposals must provide proof that Contractor has authority and authorization to use each proposed disposal facility.

(*Id.* ¶ 12.) Rotondi and Britton both submitted proposals and were the only two bidders. (*Id.* ¶¶ 6, 39.)[1] On October 5, 2023, by resolution of the Township council, the Township awarded the contract to Britton. (*Id.* ¶ 18; D.E. 26, Buzak Cert., Ex. D (Resolution).)[2]

Rotondi attacks this decision on several grounds. First, it asserts that Britton's proposal contained "numerous" untrue statements. (Compl. ¶¶ 7-9 (Britton's proposal stated that it had never failed to complete work awarded to it, despite having "previously received Notice(s) of Violation(s) from the New Jersey Department of Environmental Protection in connection with

---

[1] Rotondi pleads that the bids were submitted on August 30, 2023 (*id.* ¶ 6) but that the notice soliciting bids was posted on September 19, 2023 (*id.* ¶ 4)—three weeks later. Resolving the discrepancy is not material to the disposition of the motions to dismiss.

[2] As discussed *infra*, the limited universe of documents that a court may consider on a Rule 12(b)(6) motion to dismiss includes documents integral to or explicitly relied on in the complaint; matters of public record, including prior judicial opinions insofar as the court looks to the existence of the information in them rather than the truth of that information; and undisputedly authentic documents attached to the motion to dismiss if the plaintiff's claims are based on them. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The resolution awarding the 2023 contract qualifies, as do Rotondi's 2020 complaint and the judicial opinion, both of which are discussed below.

public contracts awarded to them"); *id.* ¶¶ 10-11 (Britton allegedly "has been sued numerous times" but its bid stated that no lawsuits had been filed with respect to any of its contracts).)

Second, Rotondi contends that the bid specifications were problematic, describing them as "self-contradictory and inconsistent[]." (*Id.* ¶¶ 13-14.) It asserts that after reviewing the specifications and Britton's bid, Rotondi complained to the Township and to the NJDEP about the specifications and stated that Britton could not fulfill them (*Id.* ¶ 15.) The complaints to the NJDEP allegedly prompted the agency to contact the Township. (*Id.* ¶ 16.)

Third, Rotondi cites its complaints, formal and informal, as reasons that the Township picked Britton over it. These complaints included the ones to the NJDEP. (*E.g.*, *id.* ¶ 30.) They also included Rotondi's 2020 lawsuit over the award of that year's recycling contract to Britton. (*Id.* ¶¶ 17, 30, 35-36.) In that action (the "2020 Action"), Rotondi named the Township and Britton as defendants; asserted that the Township violated the Local Public Contracts Law ("LPCL"), N.J.S.A. 40A:11-1 *et seq.*, by awarding the 2020 leaf recycling contract to Britton despite its facility purportedly lacking the necessary capacity; and sought to rescind the contract and have it awarded it to Rotondi instead. (D.E. 13-2, Cadmus Cert., Ex. A, 2020 Complaint.) The 2020 Action was resolved in the defendants' favor, with a ruling that Rotondi had failed to state a claim under the LPCL. (Cadmus Cert., Ex. D (2020 decision).)

Finally, Rotondi asserts that Britton is either breaching the contract or violating its state recycling permits. According to Rotondi, the facility Britton uses for the leaves it picks up from the Township lacks the capacity to process the required leaf volume, meaning either it isn't picking up the required volume, or it is processing more than its facility's permit allows. (Compl. ¶¶ 19-22.) The NJDEP has "taken notice" and issued notices of violation to Britton for "failure, refusal, or inability to lawfully process leaves." (*Id.* ¶ 23.)

On November 20, 2023, more than a month after the Township awarded the contract and while the contract term was already underway, Rotondi filed a complaint in New Jersey state court asserting that the Township retaliated against it for exercising its free speech, expression, and association rights, in violation of the state and federal constitutions (counts 1 and 2, respectively); that the Britton Defendants tortiously interfered with its prospective economic advantage (count 3); and that the Court should issue a declaratory judgment that the bid specifications and contract are void and the contract must be rescinded (count 4).

On December 18, 2023, defendants removed the action to this Court on the basis of federal question jurisdiction. (D.E. 1.) A month later, the Township moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Rotondi's claims against it were barred by collateral estoppel (referring to the 2020 proceedings) and in any event were not adequately pleaded to survive dismissal. (D.E. 9.) The Britton Defendants also moved to dismiss under Rule 12(b)(6), likewise invoking collateral estoppel. (D.E. 13.) They further argue that Rotondi has failed to state a viable claim for tortious interference or declaratory judgment, and that no facts whatsoever are alleged against James Britton. Rotondi counters that collateral estoppel does not apply because the issues in the 2020 action were not identical to the issues in this case, and that its substantive claims are sufficiently pleaded to withstand the motions to dismiss. (D.E. 18.) Defendants have filed replies that largely echo their moving briefs. (D.E. 20, 22.)

**III.    Standard of Review**

Motions to dismiss under Fed. R. Civ. 12(b)(6) are to be granted where, "accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom there is no reasonable reading upon which the plaintiff may be entitled to relief." *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020) (cleaned up). To

withstand dismissal, the complaint must plead a plausible claim for relief, which means the plaintiff has pleaded "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Curley v. Monmouth Cnty. Bd. of Chosen Freeholders*, 816 F. App'x 670, 674 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded in determining whether this standard is met. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018) (cleaned up).

On a Rule 12(b)(6) motion, the district court's review is limited to the allegations in the complaint, documents attached to the complaint, matters of public record, and documents that form the basis of the claim. *Lum*, 361 F.3d at 222 n.3. A document "forms the basis of the claim" if it is "integral to or explicitly relied upon in the complaint. *Id.* (cleaned up). *See also Pension Ben. Guar. Corp.*, 998 F.2d at 1196 (courts may consider "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). "[C]onsidering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered." *Lum*, 361 F.3d at 222 n.3.

Prior judicial opinions are also within the Court's purview on a motion to dismiss, in a limited way. They "constitute[] a public record of which a court may take judicial notice," but only "to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Id.*

## IV.   Discussion

### A.  Collateral Estoppel

Collateral estoppel, or issue preclusion, bars relitigation of an issue of fact or law that was "'actually litigated and determined by a valid and final judgment, [where] the determination [was] essential to the judgment.'"  *Winters v. N. Hudson Reg'l Fire & Rescue*, 212 N.J. 67, 85 (2012) (quoting Restatement (Second) of Judgments § 27 (1982)).  Under New Jersey law,[3] the party invoking it must show that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Id.* (quoting *Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 521 (2006)).

Defendants, who have the burden to establish the applicability of this doctrine,[4] argue that the 2020 Action involved the same parties, issues, and allegations, was dismissed in defendants' favor, and bars the current complaint.  Rotondi counters that collateral estoppel is "[a]t best" relevant to its declaratory judgment claim, and even then, the issues raised in this case are not identical to, and were not actually litigated in, the prior action.  (D.E. 18, Pl.'s Opp. 1.)

At the outset, it is apparent that the earlier lawsuit cannot entirely foreclose Rotondi's claims in this action.  Its very existence is one of the grounds for Rotondi's retaliation claims in the current action.  The retaliation claims are also based on complaints Rotondi allegedly made

---

[3] Because defendants rely on a New Jersey judgment, the Court looks to New Jersey law to determine the preclusive effect of that judgment.  *See, e.g.*, *Hart v. Wells Fargo Bank, N.A.*, 2023 WL 3244574, at *1 n.2 (3d Cir. May 4, 2023).

[4] *See, e.g.*, *Fuzy v. Westfield Bd. of Educ.*, 2022 WL 1284731, at *5 (D.N.J. Apr. 29, 2022) (Cecchi, J.) (citing *Matter of Estate of Dawson*, 136 N.J. 1, 20 (1994)).

to the Township and the NJDEP about the 2023 bid process.  To state the obvious, the role of the earlier lawsuit and the complaints in the Township's 2023 bid award could not have been litigated in the 2020 Action, which concluded in 2021.

For its tortious interference claim, Rotondi alleges that Britton represented that it could meet the bid requirements but knew this to be untrue.  (Compl. ¶¶ 40-41.)  In seeking declaratory judgment, Rotondi asserts that Britton's performance of the contract was "unlawful and/or violative of public policy."  (*Id.* ¶ 47.)  To the extent these allegations refer to Britton's ability to process the necessary leaf volume, they are closer to an issue previously litigated, but on close review of the relevant documents from the 2020 Action,[5] still do not warrant the application of collateral estoppel on the record the parties have offered.

In its 2020 complaint, Rotondi asserted that Britton's bid was defective and that the Township violated the LPCL in awarding it the contract because Britton's permit allowed it to process a lower leaf quantity than required by the 2020 bid specifications.  (D.E. 13-2, Cadmus Cert., Ex. A (2020 Complaint).)  Superior Court Judge Stuart A. Minkowitz, with the benefit of the parties' briefing on Rotondi's order to show cause and after oral argument, concluded that the Township's 2020 bid specifications did not require the bidder to submit information about or proof of the processing capacity of the recycling facility it intended to use.  (Cadmus Cert., Ex. D

---

[5] The documents the Court examines from that action are permissibly within the scope of its consideration on a Rule 12(b)(6) motion. *Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 n.3 (3d Cir. 2017) (dismissal on grounds of affirmative defenses is proper if apparent on face of complaint or limited additional sources, such as public records including judicial proceedings); *see also Southern Cross*, 181 F.3d at 426 ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."); *Parker v. Estate of Blair*, 2020 WL 6707963, at *4 (D.N.J. Nov. 16, 2020) (McNulty, J.) (judicial notice of prior opinion "particularly appropriate" where being considered "not as independent evidence of the relevant events, but only for the purpose of ascertaining the scope [of] what it decided").

(Judgment and Statement of Reasons, at 7).)[6]  That conclusion was based on the language of the bid specifications:

> The successful contractor must possess and/or provide through a third party the following certification: State of NJ Recycle Center General Approval Class-C or equivalent license or certification from another jurisdiction/state and must provide proof of such certification before the award of the contract.  If the bidder is not using his own facility for the leaves, he must provide a letter from the facility authorizing him to deliver the leaves to that facility.
>
> A copy of the above-noted certificate and approval letter (if bidder is taking the leaves to a facility he does not own) must be provided before award but it is strongly recommended that bidders supply this information with their bid proposal.  If the required documents are not provided within 7 business days of the Township request, the bidder's bid will be rejected.  The Township reserves the right to verify the accuracy of the documents provided.

(*Id.*)  The specifications, then, required the bidder to (a) have the requisite certification, (b) provide proof of that certification, and (c) provide an authorization letter if not using its own facility.  Per the ruling, "Britton followed the express and unambiguous language of the bid specifications by submitting the 'Class-C or equivalent' Permit-by-Rule letter for its site in Morrisville, Pennsylvania," and invalidating its bid "because . . . it did not provide proof of recycling capacity, would erroneously add a specification that was not intended by [the Township]."  (*Id.*)

If the 2023 bid specifications were precisely the same as the 2020 bid specifications, one could ostensibly conclude that the 2023 specifications likewise did not include a requirement that bidders supply proof of recycling capacity, and that therefore Rotondi would be collaterally estopped from arguing that the Britton's 2023 bid was defective because its facility's processing capacity was insufficient or because it failed to supply proof of that capacity with its bid.  That is

---

[6] Judge Minkowitz also observed Rotondi was, according to defendants, the *third*-lowest bidder, meaning that even if Britton was disqualified Rotondi would not have been awarded the contract. (*Id.* at 8 n.3.)

8

essentially the Britton Defendants' collateral estoppel argument: it defines the issue in both cases as whether Britton "made 'untruths' about its ability to comply with the bid specifications as to the volume of leaves to be removed and recycled," or, similarly, as "whether Britton's leaf collection bid was deceptive, based on [its] recycling capacity." (D.E. 13-1, Britton Moving Br. 13.)

Leaving aside that Rotondi's factual assertions are arguably broader than that description,[7] there is a more fundamental problem. The 2023 bid specifications have not been supplied to the Court, and what *is* before the Court – (a) Rotondi's complaint allegations describing the 2023 specifications, and (b) a copy of the 2020 specifications, which appears in the exhibits to Britton's order to show cause opposition in the 2020 Action – does not permit the conclusion that the 2020 and 2023 bid specifications were identical.

For example, the 2023 specifications (as Rotondi describes them) require bids to "identify each proposed disposal facility the Contractor intends to use" and "provide proof of each proposed disposal facility's classification" (Compl. ¶ 12d, 12e), neither of which was required by the 2020 specifications (*see* Cadmus Cert., Ex. C (Buzak Cert. dated 11/25/2020, Ex. B)). Rotondi also claims that the 2023 specifications "state that the Class C or equivalent facility does not need to have the capacity to accept approximately 20,000 cubic yards of leaves," and that the leaves "do not need to be disposed of at the facility provided in the permits submitted" (Compl. ¶¶ 13-14); these parameters do not appear in the 2020 specifications.[8]

---

[7] For example, Rotondi's "untruths" allegations in the complaint are not based on recycling capacity, but instead that "Britton falsely state[d] that they have never failed to complete work awarded to it" and that "no lawsuits of any kind [had] been filed with respect to any of their contracts." (Compl. ¶¶ 7-11.)

[8] The complaint's pleading of these allegations is, to be generous, unclear. Is Rotondi asserting that the 2023 specifications expressly state that the facility need not have a 20,000 cubic yard

9

The Township describes the "factual issue being litigated" in this case as "the validity of the Township's specifications for its leaf collection contract, and the claim by Plaintiff that Britton could not meet those requirements." (D.E. 9, Twp. Moving Br. 13.) Even if the Court could conclude that the 2020 and 2023 bid specifications were identical (which, as discussed, it cannot on this record), the "validity" of those specifications was not actually litigated in the 2020 Action. Judge Minkowitz was faced with, and decided, narrower questions: what the 2020 bid specifications required of bidders, and whether Britton's submission complied.

To put this in the parlance of the collateral estoppel test, the issues now before the Court are not "identical" to issues "actually litigated" in the 2020 Action and on this record, collateral estoppel does not bar or narrow Rotondi's claims.

In its reply, the Township contended that even if collateral estoppel does not apply, the complaint "is still barred on *res judicata* grounds, which precludes re-litigation of any issue previously determined between the parties." (D.E. 20, at 2.) Issue preclusion is collateral estoppel. If the Township is, for the first time on reply, attempting to invoke claim preclusion, or *res judicata*, the argument fails (even if the Court were to consider it not waived) because the Township has not addressed why all of the elements are present, including the identity of causes of action—a particular focus because these actions arose from two different bidding processes, three years apart. *See, e.g.*, *Smith & Wesson Brands, Inc.*, 105 F.4th 67, 73 (3d Cir. 2024) (citing New Jersey requirements for claim preclusion, including that "the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one" (quoting *McNeil*

---

capacity, and that the leaves needn't be disposed of at the permitted facility? Or is this Rotondi's interpretation of the specifications, that they fail to include these as requirements? Mindful of its obligation to assume the truth of a plaintiff's factual allegations and construe factual inferences in plaintiff's favor at the motion to dismiss stage, the Court has assumed the first interpretation of these paragraphs.

10

*v. Legis. Apportionment Comm'n*, 177 N.J. 364, 395 (2003)); *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 606-07 (2015) (discussing test for identity of cause of action).

### B. Substance of the Claims

#### 1. Retaliation

Rotondi alleges that the award of the contract to Britton was an act of retaliation for Rotondi's assertion of its free speech, association, and petition rights under the First Amendment and article 1, paragraphs 6 and 18 of the New Jersey Constitution. These claims are asserted under 42 U.S.C. § 1983 and under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-1 *et seq.*, a "[s]tate analog" to 42 U.S.C. § 1983 intended to provide New Jersey citizens with a state law remedy for civil rights violations. *Perez v. Zagami, LLC*, 218 N.J. 202, 212 (2014). To plead a § 1983 claim, the plaintiff must allege that "(1) the conduct at issue was committed by a person acting under the color of state law, and (2) the complained-of conduct deprived the plaintiff of rights secured under the Constitution or federal law." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 n.6 (3d Cir. 2019). To plead a claim under the NJCRA, a plaintiff must show that the defendant was acting under color of law, and that the defendant deprived the plaintiff of, or interfered with by threats, intimidation, or coercion the plaintiff's exercise of, a right secured by the federal or state constitution or federal or state law. N.J.S.A. 10:6-2(c); *Perez*, 218 N.J. at 204, 217.

There is no dispute here that the action under "color of law" requirement for both claims was met with respect to the Township, which awarded the contract to Britton by resolution of the Township Council. (D.E. 26-1, Buzak Cert., Ex. D (Resolution)).[9] The question is whether

---

[9] To the extent the Britton Defendants argue that the retaliation claims are not properly asserted against them because they are private actors, the Court observes that Rotondi only asserts its retaliation claims against the Township.

Rotondi has plausibly alleged that the Township violated its First Amendment or analogous state constitutional rights by retaliating against it.

"To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (cleaned up). The requirements for a free speech or free petition claim under the NJCRA are similar. *See, e.g.*, *Sabino v. W. New York Bd. of Educ.*, 2022 WL 17882373, at *7 (App. Div. Dec. 23, 2022). Rotondi alleges the following:

> 15. Upon review of the bid specifications as well as Britton's bid Proposal, and prior to Randolph awarding the contract to Britton, Plaintiff made numerous complaints to Randolph directly as well as to the NJ DEP that Randolph's bid Specifications are in its view unlawful and contrary to public policy; and that there is no circumstance under which Britton could fulfil the terms of the Specifications.
>
> 16. Plaintiff understands that its complaints to the NJ DEP prompted the DEP to contact Randolph regarding these issues.
>
> 17. Plaintiff also previously sued Randolph in connection with Randolph's prior 2020 bid Specifications.

(Compl. ¶¶ 15-17.) Allegedly in retaliation, the Township awarded the 2023 leaf recycling contract to Britton instead of Rotondi. (*Id.* ¶ 18.) Assuming *arguendo* that these allegations suffice to meet the first two elements, the claim falters on the causation requirement. Rotondi has not adequately pleaded a causal connection between its complaints and the Township's decision to award the contract to Britton. "A plaintiff sufficiently pleads [its] case with respect to causation if [it] pleads that [its] 'constitutionally protected conduct was a substantial or motivating factor' for the retaliatory conduct." *Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018) (quoting *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016)). As motivation is

very rarely subject to proof by direct evidence (and Rotondi's complaint does not rely on any), a plaintiff alleging retaliation must often rely on circumstantial evidence of a retaliatory motive. *Watson*, 834 F.3d at 422. The plaintiff can do so by pointing to "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). The link can also be "gleaned from the record as a whole." *Id.* at 424.

Here, Rotondi pleads its protected conduct (making complaints and filing a previous lawsuit) and the adverse action (losing out on the contract) but fails to include factual allegations that, if true, permit an inference of a causal relationship between the former and the latter. The complaint in this action is vague about the timing and contents of Rotondi's complaints to the Township and the NJDEP, and who the complaints were made to – was it, for example, someone in a position to vote on the resolution awarding the contract? – as well as the timing of the alleged consequences to the Township of Rotondi's alleged reports to the NJDEP. Additionally, the 2020 Action concluded almost three years before the 2023 bid was awarded to Britton. The complaint does not address what happened in the intervening timeframe. While there is no "bright line rule" for when temporal proximity between protected speech and actionable retaliation is enough to permit a causation inference, *see Conard*, 902 F.3d at 184, a plaintiff must still plead more than "a mere possibility of a causal connection," *Curley*, 816 F. App'x 670, 674-75 (cleaned up). All Rotondi offers is several events prior to the award of the contract without connecting them to the Township's reasons for its award. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

13

pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)).  Rotondi's attempt in its brief to ascribe a retaliatory motive to the Township after the fact ("Simply stated, Randolph hates Plaintiff" (D.E. 18, at 4)) is an inadequate substitute for pleaded factual allegations that permit an inference of animus.

Defendants have pointed to the fact that the contract was awarded to the lowest bidder, Britton, as required by the LPCL.  Rotondi omits this information from its complaint, but the resolution awarding the contract, which is attached as an exhibit to the Township's motion to dismiss and is integral to Rotondi's claims, reflects that the Township received two bids, one from Rotondi and one from Britton, and that Britton's was lower.  (D.E. 26-1, Buzak Cert., Ex. D.)  Ultimately, "[a] defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity."  *Lauren W.*, 480 F.3d at 267.  But the defendant need only make that showing – which is often a jury question – if the plaintiff has made a *prima facie* showing of a causal connection in the ways detailed above, *Baloga*, 927 F.3d at 752 n.7, 759, and it has not done so.  *Accord Curley*, 816 F. App'x 670 (affirming orders dismissing First Amendment retaliation claim and denial of motion to amend where plaintiff failed to plausibly plead causation).

Although Rotondi has not offered any indication of how it might amend if given the opportunity, the Third Circuit generally expects district courts to afford plaintiffs alleging civil rights claims an opportunity to amend once even if not requested, so long as amendment would not be inequitable or futile.  *Ching-Luo v. Owen J. Roberts Sch. Dist.*, 2022 WL 4480559, at *3 n.6 (3d Cir. Sept. 27, 2022) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)).  The Court cannot conclude at this juncture that amendment

would be inequitable or futile.  Accordingly, Rotondi's retaliation claims (counts 1 and 2) will be dismissed without prejudice, and it may file an amended complaint within 14 days.  !

### 2. Tortious Interference

Under New Jersey law, a claim for tortious interference with prospective economic advantage requires a plaintiff to establish "[1] a reasonable expectation of advantage from a prospective contractual or economic relationship, [2] that defendant interfered with this advantage intentionally and without justification or excuse, [3] that the interference caused the loss of the expected advantage, and [4] that the injury caused damage." *Patel v. Soriano*, 369 N.J. Super. 192, 242 (App. Div. 2004) (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751-52 (1989)).  The second element, which is sometimes referred to as "malice," is an "individualized," "flexible" standard that looks at whether the defendant played by the "rules of the game." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 306 (2001); *Printing-Mart*, 116 N.J. at 755 (describing "malice" as intentionally doing a wrongful act without justification or excuse (cleaned up)).  Within this flexible standard, certain categories of conduct are considered to "clearly" cross the line, including "conduct that is fraudulent . . . and thereby interferes with a competitor's economic advantage." *LaMorte Burns*, 167 N.J. at 307.  The causation element is met with proof that absent the interference, "there was a reasonable probability that the victim of the interference would have received the anticipated economic benefit. *Id.* at 306 (cleaned up).

To the extent Rotondi asserts its tortious interference claim against James Britton, that claim must be dismissed.  The complaint asserts no facts as to James Britton that would give rise to liability, nor has Rotondi articulated any legal theory whereby he would be liable for the acts of Britton.  Count 3 therefore is dismissed against James Britton without prejudice to Rotondi repleading it, if it so chooses and if it has a basis to do so, in the amended complaint the Court is

15

permitting Rotondi to file within 14 days.

As to Britton, Rotondi has alleged that Britton made statements in its bid proposal that it knew to be false, including that it had never failed to finish a job or been sued, and that it could meet the bid specifications. Rotondi further alleges that it was the only other eligible bidder, which, by logical extension, means it would have gotten the contract if Britton submitted a truthful bid. Although close, these allegations suffice to allow Rotondi to proceed past the dismissal stage on this claim against Britton specifically. The Court is unpersuaded by Britton's arguments otherwise, which summarize to (1) Rotondi had lost a bid last time and a court upheld that decision, meaning "there was no reason to believe" that it would win this bid (D.E. 13-1, at 17), and (2) that there were only two bidders did not mean Britton knew Rotondi was the other one and therefore that it had a reasonable expectation of economic advantage. Britton does not explain why Rotondi's loss of the 2020 bid and lawsuit mean that Rotondi could not have submitted a winning bid in 2023. To the extent this is a rehash of Britton's collateral estoppel argument, it fails for the reasons discussed earlier.

As to the second point, it is plausible that even if Britton, which had been through this same bidding process before, didn't know Rotondi specifically was going to bid, it did know that an inaccurate bid submission that wrongfully stated its qualifications in a disqualifying way (an allegation in the complaint, the Court stresses—not a factual finding) risked boxing out a higher bidder that met the other, non-price specifications and did not include disqualifying misstatements in its submission. In its reply, Britton contends that Rotondi has not "established how Britton, by merely submitting a bid for a project posted by the Township of Randolph constitutes 'wrongful, intentional interference' with [Rotondi's] expectation in that same project," and warns that if that were enough for a tortious interference claim, "any lost bidder"

16

could pursue such a claim against its competitor. (D.E. 22, at 11-12.) But it is not Britton's "mere" bid submission, standing alone, that Rotondi challenges; it is Britton's submission of a bid with allegedly false information that Rotondi's claim targets. Britton has not cited any authority precluding a tortious interference claim under the circumstances as alleged. Ultimately, the facts may not bear out Rotondi's assertions – for example, if the alleged misstatements in Britton's bid were not disqualifying, even if made. Taking the pleaded facts as true, however, the claim can, at this stage, proceed to discovery.

### 3. Declaratory Judgment

The final count of the complaint, count 4, seeks declaratory judgment that the terms of the bid specifications and resulting contract are void on various grounds, or alternatively that Britton's performance of the contract and the Township's acceptance of it "are unlawful and/or violative of public policy." (Compl. ¶¶ 46-47.) By way of relief, it seeks to have "Britton cease performance of the Contract," and the Township rescind the contract and either award it to Rotondi or start a new bid process. (*Id.* ¶ 48.) Although unclear, this claim appears to be asserted against the Township and Britton.

In opposing dismissal of this claim, Rotondi only addresses why collateral estoppel does not apply to it, and does not substantively grapple with the deficiencies defendants have identified with the claim. For example, it offers no reason why the Court can conclude that a live controversy still exists, where the complaint itself describes the relevant contract period as "October 1, 2023 through January 31, 2024." (Compl. ¶ 4.) Nor does it address why it has standing to bring a "facial" challenge to bid specifications embodied in a contract awarded to someone else, based on "public policy and regulatory schemes surrounding the disposal of

17

environmental waste materials." (D.E. 18, Pl. Opp. 2.)[10]  Nor does it explain why it can challenge the validity of the specifications after the fact.  In terms of a pre-contractual challenge, the complaint only states that plaintiff complained to the Township "[u]pon review of the bid specifications as well as Britton's bid Proposal, and prior to [the Township] awarding the contact to Britton." (Compl. ¶ 15.)  Elsewhere, the complaint alleges that Britton and Rotondi submitted their bids on approximately the same day (*id.* ¶ 6); these allegations read together would appear to mean that Rotondi didn't complain until after it submitted a bid.  *Cf. Jen Elec., Inc. v. Cnty. of Essex*, 197 N.J. 627, 640-41 (2009) (explaining that under the LPCL, specifically N.J.S.A. 40A:11-13, a prospective bidder who wants to challenge a bid specification "shall file such challenges in writing with the contracting agent no less than three business days prior to the opening of the bids," and "[c]hallenges filed after that time shall be considered void and having no impact on the contracting unit or the award of a contract").

To the extent Rotondi has reasons why these grounds are not fatal to its declaratory judgment claim, it needed to articulate them.  It is not up to a court ruling on a motion to dismiss to come up with reasons why a plaintiff's claims could conceivably pass muster; it is up to the plaintiff to plead a plausible claim for relief.  It has not done so, and the claim is dismissed.  If Rotondi chooses to re-plead this claim, it shall ensure that the pleading clearly states which defendant(s) this claim is asserted against, the factual basis for doing so, and what relief it is seeking.

---

[10] To the extent the opposition reflects some shifts in how Rotondi is pleading this claim, amendments to claims cannot be pursued in briefing in opposition to a motion to dismiss. *Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

## V. Conclusion

The motions to dismiss are granted as to counts 1, 2, and 4, and as to count 3 with respect to James Britton. Those claims are dismissed without prejudice to Rotondi filing, within 14 days, an amended complaint that addresses the deficiencies in the pleading of these claims. If Rotondi chooses not to file an amended complaint, these claims will be dismissed with prejudice. An appropriate order will issue.

|  |  |
|---|---|
| Date: September 16, 2024 | /s/ Katharine S. Hayden<br>Katharine S. Hayden, U.S.D.J. |

!